# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0198

State of Minnesota,
Respondent,

vs.

Julia Gabrielle Monyak,
Appellant.

**Filed October 28, 2024**
**Reversed**
**Ede, Judge**

Douglas County District Court
File No. 21-VB-23-2169

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Thomas Jacobson, Alexandria City Attorney, Gregory F. Donahue, Assistant City Attorney, Alexandria, Minnesota (for respondent)

Julia Monyak, Alexandria, Minnesota (attorney pro se)

Considered and decided by Ede, Presiding Judge; Ross, Judge; and Schmidt, Judge.

## SYLLABUS

As an element of exceeding a school speed limit in a reduced-speed zone under Minnesota Statutes section 169.14, subdivision 5a(b) (2022), the state must prove that, at the time and location of the charged driving conduct, a school speed limit was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone.

OPINION

**EDE**, Judge

In this appeal from a final disposition, appellant challenges the sufficiency of the evidence supporting her petty-misdemeanor adjudication for exceeding a school speed limit in a reduced-speed zone. Appellant argues that there is insufficient evidence to prove beyond a reasonable doubt (1) that a reduced-speed zone was made effective, (2) that the state was authorized to enforce the school speed limit at the time of the incident, and (3) that the school speed-limit sign located at the start of the reduced-speed zone was flashing. Appellant also contends that the district court abused its discretion by summarily denying her motion for a new trial. Because we conclude that there is insufficient evidence to prove that a reduced-speed zone was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone, we reverse.

## FACTS

The following factual summary is based on the evidence admitted at trial, viewed in the light most favorable to the adjudication and assuming that the fact-finder disbelieved any testimony conflicting with that adjudication.

On the morning of September 14, 2023, a law enforcement officer was parked on the right-hand side of a two-lane county road conducting speed patrol while facing in the direction of oncoming northbound traffic. As shown below in a still image from the officer's squad-car dashcam video, the officer was parked facing a flashing school speed-

limit sign, which was visible to southbound traffic and stated that the speed limit was 40 miles per hour when the sign was flashing.



During his patrol, the officer noticed a vehicle traveling northbound at a speed that he believed exceeded the 40-mile-per-hour school speed limit. Using his squad car's radar device, the officer determined that the northbound vehicle was traveling 60 miles per hour at a location that he thought was within the reduced-speed zone. The officer stopped the vehicle, identified the driver as appellant Julia Gabrielle Monyak, and issued Monyak a citation for exceeding a school speed limit in a reduced-speed zone, a violation of Minnesota Statutes section 169.14, subdivision 5a(b) (2022).

Monyak pleaded not guilty and the matter proceeded to a court trial. Two witnesses testified—the officer and Monyak—and the district court received several exhibits, which included photographs of relevant sections of the road where the incident occurred and the

officer's squad-car dashcam video. According to the officer, there were school speed-limit signs notifying both northbound and southbound drivers of the change in speed limit at the beginning of the reduced-speed zone. From his location on the road, however, the officer could not see the sign notifying northbound drivers of the reduced-speed zone starting point. The officer also testified that there were signs "at the end of the speed zone indicating that the speed zone ha[d] ended." During the officer's trial testimony, he viewed the following two photographic exhibits, which provide northbound and southbound views of the purported northern boundary of the reduced-speed zone where Monyak was driving when the officer stopped her:



(*Exhibit depicting view of purported northern boundary of school zone, facing north*)

4



*(Exhibit depicting view of purported northern boundary of school zone, facing south)*

After viewing these two exhibits, the officer admitted that he did not see the sign marking the end of the reduced-speed zone for northbound drivers. And the officer testified that, at the end of the reduced-speed zone for northbound drivers, the speed "soon changes to 30 miles per hour."

Monyak testified that, for drivers traveling northbound, no sign indicates the end of the reduced-speed zone at its purported northern boundary. But Monyak also acknowledged that the "regular speed limit drops from 55 to 30 miles per hour," which "may explain the . . . absence of an end school speed zone sign[.]"

The district court found "that the officer's testimony"—which included his admission that he did not see the sign marking the end of the reduced-speed zone for northbound drivers—"was credible and . . . supported by the [squad-car dashcam] video." The district court nevertheless "determined [that] the speed zone appeared to be properly marked in [the court's] opinion" and found that the radar evidence measuring Monyak's

speed sufficiently met the state's burden of proving Monyak guilty of exceeding a school speed limit in a reduced-speed zone. After finding her guilty, the district court ordered Monyak to pay a $225 fine.

Monyak timely filed a motion requesting a new trial under Minnesota Rule of Criminal Procedure 26.04, subdivision 1(1)(7). In that motion, Monyak advanced the same arguments that she now asserts in this appeal. The district court summarily denied Monyak's motion, reasoning that Monyak had failed to "demonstrate that the [c]ourt abused its discretion or committed any error in application of the law."

This appeal follows.

## ISSUE

As an element of exceeding a school speed limit in a reduced-speed zone under Minnesota Statutes section 169.14, subdivision 5a(b), is the state required to prove that, at the time and location of the charged driving conduct, a school speed limit was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone?

## ANALYSIS

Monyak argues that the trial record is insufficient to sustain her petty-misdemeanor adjudication because there is no evidence that appropriate signs were erected to indicate the end of the reduced-speed zone. This argument has merit.[1]

---

[1] Because we reverse on the ground that the state failed to prove that a reduced-speed zone was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone, we decline to address Monyak's other arguments.

Monyak's sufficiency-of-the-evidence claim requires that we interpret the school speed-limit law, Minnesota Statutes section 169.14, subdivision 5a(b). That statute provides in relevant part: "The school speed limit shall be effective upon the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced speed zone. Any speed in excess of such posted school speed limit is unlawful." Minn. Stat. § 169.14, subd. 5a(b).

"When a sufficiency-of-the-evidence claim turns on the meaning of the statute under which a defendant has been [adjudicated], [appellate courts] are presented with a question of statutory interpretation that [they] review de novo." *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018). "The first step in statutory interpretation is to determine whether a statute's language, on its face, is ambiguous." *Id.* "A statute is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* "If a statute is unambiguous, [appellate courts] apply its plain meaning." *Id.* "After deciding the meaning of the statute, [appellate courts] apply that meaning to the facts to determine whether there is sufficient evidence to sustain the [adjudication]." *State v. Bradley*, 4 N.W.3d 105, 109 (Minn. 2024). "When [appellate courts] consider a sufficiency of the evidence claim, [they] view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *Id.* at 110–11 (quotations omitted). "If a factfinder could reasonably decide that the defendant is guilty of the charged offense based on the evidence offered, [appellate courts] will not disturb the verdict." *Id.* at 111 (quotation omitted).

The school speed-limit statute is unambiguous because it is not susceptible to more than one reasonable interpretation. *See Henderson*, 907 N.W.2d at 625. The statute unambiguously requires the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone. Minn. Stat. § 169.14, subd. 5a(b). The statute also unambiguously prohibits speeds exceeding the posted school speed limit. *Id.* Because we must apply the plain meaning of this unambiguous statute, *see Henderson*, 907 N.W.2d at 625, we conclude that the state was required to prove beyond a reasonable doubt that Monyak exceeded the posted school speed limit in a reduced-speed zone that was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone. Minn. Stat. § 169.14, subd. 5a(b).

Our conclusion is reinforced by the persuasive authority of our nonprecedential decision in *State v. Nakhleh*, No. A23-0762, 2023 WL 8178138, at *1 (Minn. App. Nov. 27, 2023).[2] In *Nakhleh*, the appellant challenged his petty-misdemeanor adjudication for violating Minnesota Statutes section 169.14, subdivision 2(a)(1) (2022), which provides that any speed over 30 miles per hour in an urban district is unlawful. 2023 WL 8178138, at *1. The appellant maintained that the state needed to prove that the road on which he was driving was in an urban district. *Id.* We agreed, concluding that the state was required to prove that appellant was driving over 30 miles per hour in an urban district. *Id.* at *5. In so holding, we reasoned that the statute "reveals no language referencing a *posted*

___

[2] *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing that "[n]onprecedential opinions . . . are not binding authority . . . but . . . may be cited as persuasive authority").

speed limit"; "[i]nstead, the plain and unambiguous language of the statute provides that 'any speeds in excess' of '30 miles per hour in an urban district' are 'prima faci[e] evidence that the speed is not reasonable or prudent and that it is unlawful.'" *Id.* at \*2 (quoting Minn. Stat. § 169.14, subd. 2(a)(1)). "Because the applicable statute required respondent to prove that [the] appellant's driving conduct occurred in an 'urban district,' and respondent presented no evidence at trial on this element, we reverse[d]." *Id.* at \*1.

As in *Nakhleh*, we are persuaded that Minnesota Statutes section 169.14, subdivision 5a(b), demanded that the state prove Monyak's driving conduct in excess of the school speed limit occurred in a reduced-speed zone that was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone. We acknowledge that, unlike the urban-district speed-limit statute we analyzed in *Nakhleh*, the school speed-limit statute does reference a posted speed limit. *See id.* But the statute here specifies a "posted *school* speed limit" that is "effective upon the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced speed zone." *See* Minn. Stat. § 169.14, subd. 5a(b) (emphasis added).

Because "the erection of appropriate signs" is a statutory prerequisite for a "school speed limit" to "be effective[,]" *id.*, the requirement that the state prove such signs were erected is "integrated into and among the other elements in the statute defining the crime." *State v. Beganovic*, 991 N.W.2d 638, 647 (Minn. 2023) (explaining that, because the word "unlawful" in the first-degree arson statute was "not set apart from the language in the statute as an independent clause" but was "integrated into and among the other elements in

9

the statute defining the crime[,]" the statutory language supported "'unlawfully' being an element of the crime" that the state was required to prove beyond a reasonable doubt). Indeed, the school speed-limit statute applies an enhanced punishment to anyone who speeds in a reduced-speed zone: they are subject to "an additional surcharge equal to the amount of the fine imposed for the violation." Minn. Stat. § 169.14, subd. 5a(d) (2022). We therefore hold that, as an element of exceeding a school speed limit in a reduced-speed zone under Minnesota Statutes section 169.14, subdivision 5a(b), the state must prove that, at the time and location of the charged driving conduct, a school speed limit was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone.

Having decided the meaning of the school speed-limit statute, we now apply that meaning to the facts before us to determine whether there is sufficient evidence to sustain Monyak's adjudication. *See Bradley*, 4 N.W.3d at 109. Viewing the evidence in the light most favorable to the adjudication and assuming that the district court disbelieved any testimony conflicting with that adjudication, we conclude that a fact-finder could not have reasonably found Monyak guilty of exceeding a school speed limit in a reduced-speed zone based on the evidence admitted at trial. *See id.* at 110–11.

Indeed, the state "concedes [that] there is no downstream sign for southbound traffic that states 'End School Zone Speed Limit' or any similar language" and that, "[i]f this court deems that language as required by the statute, then [the state] . . . should lose on appeal."[3]

---

[3] The state also acknowledges that the lack of a sign indicating the northern end of the reduced-speed zone violates the Minnesota Manual on Uniform Traffic Control Devices.

We agree. Although the officer first testified that, for northbound drivers, there were signs at both sides of the reduced-speed zone indicating where the reduced-speed zone began and ended, the officer ultimately admitted that he did not see the sign marking the northern end of the reduced-speed zone after he reviewed photographic exhibits depicting the northbound and southbound views of the reduced-speed zone's purported northern boundary. The district court credited this testimony, and the state did not rebut it. Nor did the state provide any other evidence proving the erection of an appropriate sign indicating the northern end of the reduced-speed zone. Moreover, the officer's admission that no sign marked the end of the reduced-speed zone for northbound drivers aligns with Monyak's testimony and with the photographic and squad-car dashcam video evidence in the record.

Citing Minnesota Statutes section 169.06, subdivisions 4(c) and 4(d) (2022), the state nonetheless asserts that strict compliance with the school speed-limit statute is not required. Subdivision 4(c) provides: "Whenever official traffic-control devices are placed in position approximately conforming to the requirements of this chapter, such devices shall be presumed to have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence." And subdivision 4(d) states: "Any official traffic-control device placed pursuant to the provisions of this chapter and purporting to conform to the lawful requirements pertaining to such devices shall be presumed to comply with the requirements of this chapter, unless the contrary shall be established by competent evidence."

While these provisions may not require strict compliance with certain traffic laws for enforcement under some circumstances, subdivisions 4(c) and 4(d) do not apply here.

This is not a case in which the evidence shows that an appropriate sign indicating the northern end of the reduced-speed zone was "placed in position approximately conforming" or "purporting to conform" to the school speed-limit statute. *See* Minn. Stat. § 169.06, subd. 4(c)–(d). This is a case in which there is no evidence that an appropriate sign indicating the northern end of the reduced-speed zone was erected at all. Because a missing sign neither approximately nor purportedly conforms to the lawful requirements of Minnesota Statutes section 169.14, subdivision 5a(b), no presumption of validity applies here.

In that connection, another provision of chapter 169 also supports our decision to reverse. Under Minnesota Statutes section 169.06, subdivision 4(b) (2022), "[n]o provision of this chapter for which official traffic-control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official device is not in proper position and sufficiently legible to be seen by an ordinarily observant person." Thus, in addition to concluding that the evidence is insufficient to prove beyond a reasonable doubt that she violated Minnesota Statutes section 169.14, subdivision 5a(b), we conclude that the school speed limit was unenforceable against Monyak because no evidence shows that an appropriate sign was erected in proper position to indicate the northern end of the reduced-speed zone at the time and place of her driving conduct. *See* Minn. Stat. § 169.06, subd. 4(b).

## DECISION

As an element of exceeding a school speed limit in a reduced-speed zone under Minnesota Statutes section 169.14, subdivision 5a(b), the state must prove that, at the time

12

and location of the charged driving conduct, a school speed limit was made effective by the erection of appropriate signs designating the speed and indicating the beginning and end of the reduced-speed zone. Because the trial record does not reflect that an appropriate sign was erected indicating the northern end of the reduced-speed zone when and where Monyak was driving, we conclude that the evidence cannot sustain Monyak's petty-misdemeanor adjudication for exceeding a school speed limit in a reduced-speed zone.

**Reversed.**